The PEOPLE of the State of Colorado,
Plaintiff-Appellant,

v.

Francisco F. LOVATO,
Defendant-Appellee.

No. 80SA91.

Supreme Court of Colorado.

June 29, 1981.

Dale Tooley, Dist. Atty., Brooke Wunnicke, Chief App. Deputy Dist. Atty., Guy Till, Deputy Dist. Atty., Denver, for plaintiff-appellant.

No appearance for defendant-appellee.

LOHR, Justice.

The prosecution appeals from a decision of the Denver District Court that blasting caps with attached safety fuses are not explosive or incendiary devices within the meaning of section 18–12–109(1)(a)(I), C.R.S.1973 (1978 Repl.Vol. 8). We disapprove the district court's decision.

The defendant, Francisco F. Lovato, was charged by information with the class 4 felony of knowingly possessing "an explosive and incendiary device, to-wit: blasting caps and safety fuses," on April 10, 1979, in violation of section 18–12–109(2), C.R.S.1973 (1978 Repl.Vol. 8). In the ensuing jury trial, the prosecution presented evidence that the defendant had sold four blasting caps with attached safety fuses to an undercover detective on the date charged. At the conclusion of the prosecution's case, the defendant moved for a judgment of acquittal. The district court granted the motion based on its conclusion that blasting caps with attached safety fuses are not explosive or incendiary devices within the statutory definition. The prosecution brings this appeal pursuant to section 16–12–102, C.R.S. 1973 (1978 Repl.Vol. 8) to challenge that decision. The defendant has not participated in this appeal.[1]

The statute under which the defendant was charged provides: "Any person who knowingly possesses or controls an explosive or incendiary device commits a class 4 felony." Section 18–12–109(2), C.R.S.1973 (1978 Repl.Vol. 8). Subsection (6) of that same statute makes it a class 4 felony to possess "explosive or incendiary parts." The trial judge concluded that blasting caps and safety fuses are "explosive or incendiary parts" and not "explosive or incendiary device[s]," so that the proof did not establish the crime charged.

The relevant terms are defined by the statute as follows:[2]

"18–12–109. *Possession, use, or removal of explosives or incendiary devices—possession of components thereof—persons exempt—hoaxes.* (1) As used in this section:

(a)(I) 'Explosive or incendiary device' means:

(A) Dynamite and all other forms of high explosives;

(B) Any explosive bomb, grenade, missile, or similar device; and

(C) Any incendiary bomb or grenade, fire bomb, or similar device, including any device, except kerosene lamps, which consists of or includes a breakable container including a flammable liquid or compound and a wick composed of any material which, when ignited, is capable of igniting such flammable liquid or compound and can be carried or thrown by one individual acting alone.

---

1. The prosecution recognizes that the defendant cannot be retried because of the constitutional protection against double jeopardy. *People v. Martinez*, 191 Colo. 428, 553 P.2d 774 (1976).

2. The Explosives Act, sections 9–7–101 *et seq.*, C.R.S.1973, (1980 Supp.) contains a definition of "explosive" and of "explosive device" and prescribes criminal penalties for certain activities with explosives without obtaining a permit. The parties conceded before the trial court that the definitions in the Explosives Act are not controlling on the question before us. In this appeal the district attorney does not cite the Explosives Act.

(II) 'Explosive or incendiary device' shall not include rifle, pistol, or shotgun ammunition, or the components for hand loading rifle, pistol, or shotgun ammunition.

(b)(I) 'Explosive or incendiary parts' means any substances or materials or combinations thereof which have been prepared or altered for use in the creation of an explosive or incendiary device. Such substances or materials may include, but shall not be limited to, any:

(A) Timing device, clock, or watch which has been altered in such a manner as to be used as the arming device in an explosive;

(B) Pipe, end caps, or metal tubing which has been prepared for a pipe bomb;

(C) Mechanical timers, mechanical triggers, chemical time delays, electronic time delays, or commercially made or improvised items which, when used singly or in combination, may be used in the construction of a time delay mechanism, booby trap, or activating mechanism for any explosive or incendiary device.

(II) 'Explosive or incendiary parts' shall not include rifle, pistol, or shotgun ammunition, or the components for hand loading rifle, pistol, shotgun ammunition, or any signaling device customarily used in operation of railroad equipment." [3]

The prosecution's evidence established that the explosive material in a blasting cap burns at a rate of 22,000 to 25,000 feet per second, as contrasted with 300 to 500 feet per second for firecracker powder. On the basis of this distinction in the rate of combustion, the material in blasting caps is classified as a high explosive, rather than a low explosive.[4] The proper use of blasting caps is to detonate dynamite. A cap is attached to a stick of dynamite, and the safety fuse is lit. The cap explodes when the fuse burns down to the cap, and that explosion in turn detonates the dynamite. Although blasting caps are designed to be exploded by application of heat through a fuse, they can also be triggered by impact. The force of the explosion of a blasting cap is sufficient to remove a person's hand or foot if in contact with the cap at the time of the explosion.

The trial judge concluded that the statutory categories of "explosive or incendiary device" and "explosive or incendiary parts" are intended to be mutually exclusive. He then reasoned that, as the intended function of blasting caps is to detonate larger quantities of explosives, blasting caps fit most naturally into the statutory description of "commercially made ... items which, when used singly or in combination, may be used in the construction of a[n] ... activating mechanism for any explosive or incendiary device...." Section 18–12–109(1)(b)(I)(C), C.R.S.1973 (1978 Repl.Vol. 8) (defining one type of "explosive or incendiary part"). Therefore, the trial judge concluded that blasting caps are not embraced within "explosive or incendiary device[s]," and consequently that the possession of blasting caps does not support a charge of possession of "explosive or incendiary device[s]." We do not agree.

■ The general distinction between the types of items classified as explosive or incendiary devices and those classified as explosive or incendiary parts is apparent from the plain language of the statute. Explosive or incendiary devices are limited to those items which are capable of exploding or burning.[5] Explosive or incendiary

3. The definition of explosive or incendiary device was apparently based on the federal definition contained in 18 U.S.C. § 232(5) (1968) (defining explosive or incendiary device for purposes of the federal statute on civil disorders).

4. See footnote 6, infra.

5. There is no doubt that blasting caps are "explosives." See footnote 6, infra. See also Wilson v. State, 26 Ohio App. 7, 159 N.E. 585

(1927); 35 C.J.S. Explosives § 1 (1960). Blasting caps are specifically so designated in the statutes of other jurisdictions dealing with unlawful possession of such materials. E. g., Cal. Health & Safety Code §§ 12000, 12305 (West 1975); Fla.Stat.Ann. § 790.001(5) (1976). They are also classified as explosives for purposes of the federal statutes regulating certain unlawful uses and interstate transportation of explosives. See 18 U.S.C. §§ 841, 842, 844 (blasting

parts, on the other hand, include many items which in themselves are not explosive or incendiary, but which "have been prepared or altered for use in the creation of an explosive or incendiary device." Thus, timing devices, time delays, inactive components of pipe bombs, mechanical triggers and like devices are explosive or incendiary parts since they have potential for harm only when utilized in combination with other items.

The necessary intrinsic potential for harm represented by explosive or incendiary devices is recognized by the statutory scheme which not only forbids their possession, but also proscribes the use of such devices in the commission or attempted commission of a felony (such conduct constituting a class 2 felony), section 18–12–109(4), C.R.S.1973 (1978 Repl.Vol. 8); proscribes the removal of such devices, without permission, from the premises where kept by the lawful possessor (conduct requiring a mandatory two-year minimum sentence for conviction), section 18–12–109(5), C.R.S.1973 (1978 Repl. Vol. 8); and proscribes the giving, mailing or sending of false, hoax or facsimile explosive or incendiary devices to any person or the placing of such an item on any property (conduct punished as a class 5 felony), section 18–12–109(7), C.R.S.1973 (1978 Repl. Vol. 8). No similar offenses exist with respect to "explosive or incendiary parts."

The evidence here is that the material in a blasting cap is classified as a high explosive by experts in the field of explosive use.[6] It would thus technically fall within the ambit of "other forms of high explosives" which are expressly included in the definition of explosive or incendiary

devices. Moreover, the quantity of the material is sufficient to cause severe injury, e. g., the loss of a hand or foot, if the explosion occurs in contact with the body. We conclude that it was the legislative intent to encompass items so intrinsically harmful within the statutory definition of explosive or incendiary device. It is the intrinsic harmful potential of the item apart from any association with other items which is the key to the statutory classification, not the intended use in connection with a yet more harmful explosive device such as dynamite.

The evidence established that the defendant possessed four blasting caps, which we have concluded to be explosive or incendiary devices. Therefore, the trial court erred in granting the defendant's motion for a judgment of acquittal. We disapprove the judgment.

---

caps defined as detonators which in turn are included in the definition of explosives); *see also* 27 C.F.R. § 181.11 (1980). The Colorado Department of Labor similarly classifies blasting caps as explosives. 7 C.C.R. 1101–9 § 1.2. *See also* 49 C.F.R. § 172.101 (Federal Department of Transportation Hazardous Materials Table.)

**6.** This classification is also supported by scientific works in the area. For example, Melvin Cook in his book *The Science of High Explosives* (Reinhold 1958), states that "detonating" or "high" explosives, which are characterized

by very high rates of reaction and high pressure may be subdivided into *primary* and *secondary* explosives. "The primary high explosives (nearly) always detonate by simple ignition by such means as spark, flame, impact, and other primary heat sources of appropriate magnitude. The secondary explosives require, at least in practical application, the use of a *detonator* and frequently a *booster*." *Id.* at 1. A primary high explosive is an essential element of a detonator such as a blasting cap. *Id., See generally Id.* at 16, 17.